IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

VICTORIA A. FORD,
Plaintiff,
v. Civil Action No. 1:26-CV-67
ASCENSION LIVING ALEXIAN PACE,
Defendant.

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**
(Jury Trial Demanded)

## INTRODUCTION

Plaintiff Dr. Victoria A. Ford, proceeding pro se, brings this action against Defendant Ascension Living Alexian PACE for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff was employed as an Intake Coordinator from December 12, 2023, until her unlawful termination on August 5, 2025. During her employment, Plaintiff was subjected to race discrimination, sex discrimination including denial of breastfeeding accommodations, a hostile work environment, and unlawful retaliation for opposing discriminatory practices. Plaintiff seeks all available legal and equitable relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all unlawful employment practices alleged herein were committed in the Eastern District of Tennessee, Chattanooga Division.

3. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Tennessee Office of Attorney General, Civil Rights Enforcement Division, on February 17, 2026. The EEOC assigned Charge No. 494-2025-04629. Plaintiff received a Notice of Right to Sue on February 24, 2026. This Complaint is timely filed within 90 days of receipt of that notice.

## PARTIES

4. Plaintiff Dr. Victoria A. Ford is an individual residing at 4606 Kemp Drive, Chattanooga, Tennessee 37411. Plaintiff is a Black female born in 1992 and a member of protected classes under Title VII on the basis of both race and sex.

5. Defendant Ascension Living Alexian PACE is an employer with a principal place of business at 425 Cumberland Street, Suite 110, Chattanooga, Tennessee 37404. Defendant

employs between 1,000-10,000 employees, well exceeding the 15-employee threshold required for coverage under Title VII of the Civil Rights Act of 1964.

## FACTUAL ALLEGATIONS

### A. Background and Employment

6. Plaintiff was hired by Defendant on December 12, 2023, as an Intake Coordinator. Throughout her employment, Plaintiff performed her job duties competently and was qualified for her position and for any internal leadership positions to which she applied.

7. The earliest discriminatory act occurred on or around December 1, 2023, and the most recent adverse employment action occurred on August 5, 2025, the date of Plaintiff's termination.

### B. Disparate Treatment Regarding Breastfeeding Accommodations

8. At the time Plaintiff was hired by Defendant, Plaintiff was a nursing mother to a newborn infant. Defendant's in-house Human Resources representative, Lisa K., was made aware verbally during Plaintiff's onboarding that Plaintiff was a nursing mother who would require appropriate accommodations to express breast milk during the workday.

9. Despite this knowledge, Defendant made no attempt to identify or provide Plaintiff with a suitable private space for breastfeeding accommodations. Instead, Plaintiff was placed in a communal office shared with three other employees, including a director, and was continuously exposed to other employees who entered the space without notice. No private accommodation was provided.

10. In contrast, a White employee identified as S.T. was provided a private office for the same breastfeeding purpose. This disparate treatment was based on Plaintiff's race and sex.

### C. Denial of Promotions and Pretextual Feedback

11. During her employment, Plaintiff applied for multiple internal leadership positions for which she was qualified based on her education, experience, and demonstrated skills.

12. Defendant repeatedly denied Plaintiff these promotions. Defendant provided inconsistent and pretextual explanations, informing Plaintiff on some occasions that she was "overqualified" and on other occasions that she was "underqualified" for the same or similar roles.

13. Plaintiff is informed and believes that White employees with equal or lesser qualifications were selected for the positions she was denied. This pattern of disparate treatment was motivated by Plaintiff's race.

### D. Racially Hostile Work Environment

14. During Plaintiff's employment, a supervisor or manager made racially insensitive remarks in the workplace, including statements suggesting that Plaintiff could manage a predominantly Black department because she could "handle them better." These remarks were directed at and about Plaintiff based on her race.

15. After Plaintiff raised concerns about racism in the workplace, a manager or supervisor asked her whether she intended to file a complaint. Plaintiff reasonably perceived this as an attempt to intimidate and discourage her from exercising her protected rights.

16. The foregoing conduct created a hostile work environment that interfered with Plaintiff's ability to perform her job duties. As a direct result of the hostile work environment, Plaintiff was compelled to seek professional mental health therapy to address the emotional and psychological harm she sustained during her employment.

### E. Discriminatory Termination

17. On August 5, 2025, Defendant terminated Plaintiff's employment. Defendant's stated reason, as reflected in the Separation Notice, was: "Due to criminal charges against you that [have] not been successfully resolved, and unable to work since 5/12/25, the decision was made to terminate your employment." The criminal charges had not been resolved at the time of Plaintiff's termination.

18. A White Director employed by Defendant, identified as T.B., had multiple pending felony criminal charges during the prior two years. Despite this, Defendant permitted T.B. to remain employed until after a conviction was entered, and provided T.B. with accommodations in the interim.

19. Defendant applied its criminal charge policy in a racially discriminatory manner, terminating Plaintiff, a Black employee, prior to any resolution of her charges, while retaining a White employee under materially identical or worse circumstances.

### F. Retaliation

20. Plaintiff engaged in protected activity under Title VII by complaining about racially insensitive remarks in the workplace and by opposing discriminatory practices.

21. Following Plaintiff's protected complaints, Defendant escalated adverse actions against Plaintiff, culminating in her termination on August 5, 2025.

22. A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her, including her termination.

### G. Evidence

23. Plaintiff possesses audio recordings and documentation supporting her claims of discrimination and retaliation, which she is prepared to produce during discovery or any court proceeding.

### H. Pre-Litigation Settlement Efforts

24. On February 17, 2026, Plaintiff submitted a formal pre-litigation settlement demand to Defendant seeking $410,000 in damages. Defendant did not respond with any substantive offer, nor did Defendant acknowledge receipt of the demand in any meaningful way. On March 4, 2026, Plaintiff submitted a follow-up demand. Defendant again failed to respond or engage in any settlement discussions. Having received no response to either outreach, Plaintiff now files this Complaint.

## CAUSES OF ACTION

### COUNT I: Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a))

25. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

26. Defendant discriminated against Plaintiff on the basis of her race (Black) in the terms, conditions, and privileges of her employment by: (a) denying her promotions while selecting White employees with equal or lesser qualifications; (b) subjecting her to racially insensitive remarks in the workplace; (c) denying her private breastfeeding accommodations while providing them to a White employee; and (d) terminating her employment while retaining a White Director with pending felony criminal charges under materially comparable circumstances.

27. Defendant's actions constitute unlawful race discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

### COUNT II: Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2(a))

28. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

29. Defendant discriminated against Plaintiff on the basis of her sex (female) by denying her a private space to express breast milk while employed, a basic accommodation that was provided to a White female employee (S.T.). Defendant's Human Resources representative was verbally informed at onboarding that Plaintiff was a nursing mother, yet no accommodation was made. This constitutes disparate treatment in the terms and conditions of Plaintiff's employment on the basis of both race and sex.

30. Defendant's actions constitute unlawful sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a).

### COUNT III: Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964

31. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

32. The racially insensitive remarks made in the workplace, the intimidating response to Plaintiff's complaints about racism, and the denial of adequate breastfeeding accommodations collectively created a hostile and abusive work environment based on Plaintiff's race and sex.

33. The hostile work environment was severe or pervasive enough to alter the conditions of Plaintiff's employment and interfere with her ability to perform her job duties. The environment caused Plaintiff to seek professional mental health treatment.

34. Defendant's conduct constitutes an unlawful hostile work environment in violation of Title VII.

## COUNT IV: Retaliation in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a))

35. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

36. Plaintiff engaged in protected activity by opposing discriminatory practices in the workplace, including complaining about racially insensitive remarks and disparate treatment. After raising these concerns, Plaintiff was asked whether she intended to file a complaint, signaling a retaliatory environment.

37. Plaintiff suffered adverse employment actions including escalating mistreatment and ultimately termination of her employment on August 5, 2025.

38. A direct causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her.

39. Defendant's conduct constitutes unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

## DAMAGES

40. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer the following damages:

(a). Back pay: Approximately $60,000, representing lost wages, bonuses, promotions, and benefits from May 1, 2025 to the present;

(b). Front pay: At least $100,000 to compensate for future lost wages, promotions, and benefits while Plaintiff seeks comparable employment;

(c). Compensatory damages: $150,000 for emotional distress, humiliation, anxiety, PTSD, therapy costs, and reputational harm caused by the discrimination and retaliation. Plaintiff was compelled to seek professional mental health therapy as a direct result of the hostile work environment created and sustained by Defendant;

(d). Punitive damages: $100,000 to punish Defendant for its reckless disregard of Plaintiff's federally protected rights and to deter similar conduct;

(e). Pre-judgment and post-judgment interest on all amounts awarded;

(f). Attorneys' fees and costs should Plaintiff retain counsel; and

(g). Such other equitable relief as the Court deems appropriate, including a neutral employment reference and expungement of negative information from Plaintiff's personnel file.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Victoria A. Ford respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendant on all Counts;

B. Award Plaintiff compensatory damages including back pay, front pay, and lost benefits in an amount to be determined at trial;

C. Award Plaintiff damages for emotional distress, anxiety, PTSD, and reputational harm, including costs of professional mental health therapy;

D. Award Plaintiff punitive damages in an amount sufficient to punish Defendant and deter future misconduct;

E. Award Plaintiff pre-judgment and post-judgment interest on all amounts;

F. Award Plaintiff attorneys' fees and costs if counsel is retained;

G. Order equitable relief including a neutral employment reference and removal of negative employment records; and

H. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dr. Victoria A. Ford, Pro Se
4606 Kemp Drive
Chattanooga, Tennessee 37411
Phone: (423) 394-3733
Email: victoria.maffett@gmail.com

Date: 3/11/2026

## EXHIBITS

Exhibit A: EEOC Charge of Discrimination, Charge No. 494-2025-04629 (filed February 17, 2026)

Exhibit B: EEOC Notice of Right to Sue, issued February 24, 2026

Exhibit C: Pre-Litigation Settlement Demand Letter, dated February 17, 2026

Exhibit D: Follow-Up Settlement Demand Letter, dated March 4, 2026